UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **HEMMY SMITH** | **CASE NO. 6:22-CV-06220** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **MAGISTRATE JUDGE DAVID J. AYO** |

## **REPORT AND RECOMMENDATION**

Before this Court is an appeal of the Commissioner's finding of non-disability. This matter was referred to the undersigned for issuance of a report and recommendation pursuant to 28 U.S.C. § 636. After review of the administrative record, the parties' briefs, and the applicable law, and for the reasons set forth below, it is recommended that the Commissioner's decision be VACATED and this matter be REMANDED for further consideration pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### *Administrative Proceedings*

Claimant Hemmy Smith fully exhausted her remedies before initiating this action. Claimant filed applications for Disability Insurance Benefits and Supplemental Security Income benefits, alleging disability beginning on February 24, 2020. (Rec. Doc. 4-1 at pp. 113-14, 203). Her applications were denied. (*Id.* at pp. 103-112, 123-127). Claimant requested rehearing. (*Id.* at pp. 133-136). Her rehearing requests were denied. (*Id.* at pp. 137-142). Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.* at pp. 143-180). Her request was granted, and a hearing was scheduled for January 12, 2022. (*Id.* at pp. 181-198). By letter dated January 10, 2022, Claimant requested a hearing via video-teleconference ("Zoom"). (*Id.* at p. 279).

Pursuant to COVID-19 protocols still in place at that time, the January 12 hearing was conducted via telephone before ALJ Carol Latham. (*Id.* at pp. 25–38). No mention was made of Claimant's request for a Zoom hearing. Neither Claimant nor her counsel objected to the conduct of the hearing by telephone. (*Id.* at p. 76).

The ALJ issued her decision on April 25, 2022, finding that Claimant was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), during the relevant period of February 24, 2020 through the date of decision. (Rec. Doc. 4-1 at p. 38). Claimant applied to the Social Security Council for review, submitting evidence of hospitalizations occurring both immediately before and after the ALJ's decision, but that application was denied on October 25, 2022. (*Id.* at pp. 1-5). Therefore, the ALJ's decision became the Commissioner's final decision. *Higginbotham v. Barnard*, 405 F.3d 332, 336 (5th Cir. 2005). There being a final decision by the Commissioner in this case, review by this district court is proper under Section 1631(c)(3) of the Social Security Act and 42 U.S.C. §1383(c).

### *Relevant Factual Background*

Claimant was born on November 5, 1979. (Rec. Doc. 4-1 at p. 36). At the time of the ALJ's decision, she was 40 years old. (*Id.*). She has a high school education and previously held jobs as a kitchen helper and line cook. (*Id.* at p. 226). She alleges that she has been disabled since February 24, 2020 due to focal seizures, generalized epilepsy, migraines, anxiety, and mesial temporal sclerosis. (*Id.* at pp. 103, 284).

Claimant alleges the ALJ's ruling is not supported by substantial evidence in this case. Specifically, she asserts that medical records demonstrate that her seizures occur with such frequency that she would be absent from work "at least two days a month" with no advance warning and off task approximately 15% of the time while at work. (Rec. Doc. 10 at pp. 1-2). Claimant also points out that medical records of her April 12-18, 2022

2

hospitalization show a general intensification of her seizures since the date of her application. (*Id.*).

### *Entitlement to Benefits*

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. 42 U.S.C. § 423(a); *Smith v. Berryhill*, 587 U.S. 471, 139 S. Ct. 1765, 1772 (2019) (quoting *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Supplemental Security Income provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1), (2); *Berryhill*, *supra*.

A person is "disabled" within the meaning of the Act when he or she is

> unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable to perform previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the are in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### *Standards of Review*

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173

(5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit defines the term "substantial evidence" as

> more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Homes v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173. A district court presented with an appeal of the Commissioner's findings must carefully review the entire record of the case but must refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Villa*, 895 F.2d at 1022, *Hollis v. Brown*, 837 F.2d 1378, 1383 (5th Cir. 1988). Conflicting evidence and credibility determinations are to be made by the Commissioner and are not within the province of the courts. *Wren v. Sullivan*, 925 F.2d 125, 126 (5th Cir. 1991); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Four elements of proof are weighed by courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience. *Wren*, 925 F.2d at 126.

### *Analysis*

The record includes the following pertinent history:

I. <u>Claimant's Medical Records</u>

    A. <u>Brock Romero, APRN-FNP, Rural Health Clinic, Loreauville, Louisiana</u>

- <u>October 17, 2017</u>:  Claimant's first visit to Romero to establish care at clinic.  Claimant reported focal seizures diagnosed about five years prior.  Romero noted Claimant's report of seizure symptoms, including "slurred speech [and] Bell's Palsy symptoms" and "extreme fatigue, tiredness, forgetfulness, and impaired vision" following seizure activity.  Claimant reported "ongoing migraine" with pain from right temporal region.  Romero recommended referral for neurology evaluation for suspected seizure disorder.

- <u>November 15, 2017</u>:  After seeing neurologist, Dr. Karim, the day before, Claimant saw Romero to request medication for anxiety.  Romero notes that Dr. Karim "feels that [Claimant] is having anxiety" and that Claimant needs to be referred for psychological evaluation and treatment.

- <u>December 4, 2017</u>:  Claimant presented with symptoms of acute sinusitis and upper respiratory infection.  Romero prescribed a Z-pack and a course of prednisone.  Romero again notes the need to refer Claimant for psychological evaluation.

- <u>March 16, 2018</u>:  Claimant saw Romero for treatment of migraine headache and medication-induced allergic reaction.  Romero prescribed EpiPen.  Romero noted claimant saw neurologist Dr. Tiffany Liu on March 15, 2018, who prescribed Depakote/Keppra/Klonipin.

- <u>February 18, 2019</u>:  Claimant saw Romero for sinus symptoms, including dry cough and ear pain lasting about a week.  Romero

5

       diagnosed acute sinusitis and upper respiratory infection and prescribed Flonase nasal spray.

- <u>September 10, 2019</u>: Claimant saw Romero for referral to Our Lady of the Lake Baton Rouge for seizures. Romero noted diagnoses of panic disorder, generalized anxiety disorder, migraine headaches, and "questionable seizure disorder."

- <u>November 27, 2019</u>: Claimant saw Romero with complaints of fatigue. Romero ordered lab work. Results reported on December 3, 2019.

B. <u>Dr. Tiffany Liu, Neurology Clinic of Opelousas, Opelousas, Louisiana</u>

- <u>January 3, 2018</u>: Claimant saw Dr. Liu for a second opinion regarding her seizure symptoms after first seeing Dr. Karim. Claimant reported daily headaches developing into migraines since August of 2018, shaking, lack of focus, and seizures preceded by periods of irritability as noticed by family members. Claimant reported multiple daily seizure events, including "a handful" of seizures involving loss of consciousness, the last of which occurred on December 24, 2017.

- <u>March 15, 2018</u>: Claimant saw Dr. Liu for a follow-up appointment. Claimant reported continued seizure activity marked by facial droop and right arm numbness. She reported that symptom onset was common "when she gets very stressed out." She further reported that she falls asleep during seizures and awakens upset, crying and with leg pain. Dr. Liu diagnosed

localization-related idiopathic epilepsy and epileptic syndromes with seizures of localized onset, not intractable, without status epilepticus. Based on this diagnosis, Dr. Liu imposed the following restrictions: no driving unless seizure-free for six months; no swimming, climbing, heights, cooking, or proximity to sharp objects; operation of heavy machinery; no use of Benadryl; no exposure to flashing lights; avoid sleep deprivation; and avoid certain antibiotics.

- <u>May 15, 2018</u>: Claimant returned for a two-month follow-up examination and reported increased migraine headaches with increased sensitivity to lights and smells. Claimant reported being seizure free at that time.

- <u>September 6, 2018</u>: Claimant returned for a two-month follow-up examination and reported increased shaking resulting in trouble feeding herself. Claimant reported that her last seizure was approximately one month prior, requiring emergency room visit at Our Lady of Lourdes ("OLOL"). Dr. Liu noted suspected "possible left centrotemporal focal seizure w/dyscognitive features[.]" An EEG was scheduled for September 13, 2018.

C. <u>Dr. Joseph Acosta, Our Lady of the Lake Physician Group Neurology, Baton Rouge, Louisiana</u>

- <u>November 25, 2019</u>: Claimant's initial visit to Dr. Acosta on referral from Romero. Reported seizures began approximately four years prior. Reported "she can go seizure free for several weeks

7

and then all of a sudden have several in a row." (*Id.* at p. 333). Reported trying Topiramate and Depakote but stopped using because of side effects. Reported current prescription for Keppra (500 mg/day). Reported last spell of seizures was one week prior. After examination, Dr. Acosta recommended an EEG, an MRI without contrast, and prescribed Keppra at 750 mg/day. Regarding Claimant's migraines, Dr. Acosta prescribed Propranolol at 80 mg/day, and Imitrex at 100 mg as needed. Dr. Acosta also prescribed Fiorinal and Klonopin as needed. He recommended the following restrictions on Claimant's activities: no driving, no proximity to open water without life preserver, and no climbing ladders. Dr. Acosta recommended adherence to a migraine diet and at least eight hours' sleep per night.

- December 3, 2019: EEG performed. No focal abnormalities, epileptiform discharges, or organized seizures were recorded. EEG noted as "normal…during relaxed wakefulness and drowsiness."

- January 8, 2020: MRI without contrast performed. Noted "changes of right mesial temporal sclerosis" but "no focal lesion or abnormal signal" or "atrophy of the fornix and mammillary bodies."

- February 19, 2020: Claimant saw Sharon Jackson, NP for follow-up visit. Claimant reported a seizure requiring emergency transport to the emergency room since her last visit. Upon evaluation, she was found to have a severe urinary tract infection. Claimant reported current right-side migraine approximately

three weeks in duration with sensation of pulling in her face and inability to think clearly. Jackson added Pamelor at 25 mg/day and Sumatriptan for acute headaches.

- <u>May 18, 2020</u>: Claimant saw Dr. Acosta for follow-up visit. Reported that last seizure was approximately April 17, 2020 and that the last before that one was in January. She reported being compliant with medications. She reported continued frequency of migraines leading, at times, to emergency room visits. She admitted non-compliance with recommended migraine diet. Dr. Acosta increased her Propranolol dosage to 120 mg/day and reduced her Imitrex dosage to 6 mg/.05 mg. He continued her Keppra dosage 750mg/day and again encouraged her to follow the migraine diet.

D. <u>Keisha S. Noel, FNP, St. Martin Parish Community Center</u>

- <u>November 11, 2019</u>: Claimant reported having weaned herself off of all medications 1.5 years prior. She reported seizures every few months with last seizure 2.5 weeks prior, for which she visited OLOL and was given Keppra and Ativan. Noel noted pending appointment with neurologist at Our Lady of the Lake scheduled for November 25, 2019.

- <u>December 20, 2019</u>: Claimant reported feeling better when taking Klonopin twice per day (1/2 tablet mornings, one whole tablet evenings). Claimant was given a prescription for continued Klonopin usage as above to treat generalized anxiety disorder.

- <u>February 26, 2020</u>: Noel continued Claimant's anxiety treatment with Klonopin with no changes. Claimant's husband reported Claimant's last seizure approximately 1.5 weeks prior with diagnosis of UTI and influenza.

- <u>June 1, 2020</u>: Claimant saw Noel in a telehealth visit. Claimant had three or four seizures back-to-back two nights prior. Claimant reported that, before this event, she had four seizures in previous three months. Upon visit to ER, Claimant's Keppra was increased from 750 mg/day to 1000 mg/day. Claimant reported compliance with Klonopin. Claimant reported she was no longer working and would apply for Social Security Disability. Noel refilled Claimant's Klonopin.

E. <u>Lafayette General Medical Center, Lafayette, Louisiana</u>

- <u>October 14, 2017</u>: Claimant presented to ER at 10:16 p.m. with headache lasting approximately two months. Claimant reported history of seizures. Reported being "out of meds for a while." Claimant reported prior visit to OLOL three days prior with no relief for same symptoms. Claimant given Dilaudid and Zofran. Claimant was discharged at 8:00 a.m.

- <u>May 30, 2020</u>: Claimant arrived at ER by private vehicle. She reported three full body seizures lasting approximately 30 seconds each prior to arrival at ER and right-side head pressure and dizziness for the last few days. Claimant reported that the last seizures before this event were three to four weeks prior.

10

Claimant was given Dilaudid and Zofran and discharged at 12:53 a.m. the following day.

- August 30, 2020: Claimant transported to LGMC ER via EMS. She reported awakening with a migraine followed by three "full body seizure episodes with confusion" prior to arrival at ER. Dr. Doyle noted postictal right-side weakness, which Claimant stated was not unusual after seizures. Claimant was discharged to home at 2:28 a.m. the following day.

F. Our Lady of Lourdes Hospital Emergency Department, Lafayette, Louisiana

The record includes evidence of ER visits on the following dates within the relevant time period:

(1) June 30, 2020, July 3, 2020: Claimant presented with headache, fatigue, and confusion. Claimant admitted to hospital for treatment and observation of seizures.

(2) August 17, 2020: Claimant presented with weakness, dizziness, and headache with increasing severity over the preceding several days. Claimant diagnosed with acute cystitis without hematuria and vertigo.

(3) September 24, 2020: Claimant presented with chest pain following change in seizure medications from Keppra to Vimpat. Claimant was directed to follow up with various doctors.

(4) <u>October 5, 2020</u>: Claimant presented with cough and nasal congestion which she felt were likely connected to the sugar cane harvest and burning occurring near her home. Claimant diagnosed with upper respiratory tract infection and acute sinusitis.

(5) <u>November 1, 2020</u>: Claimant presented with chest pain and pressure radiating to her right jaw. Claimant treated for unspecified chest pain with instructions to follow up with cardiology for stress testing.

(6) <u>December 4, 2020</u>: Claimant presented with fatigue and confusion. Claimant's spouse reported a seizure during the prior night. Diagnoses were listed as fatigue and seizure.

(7) <u>January 12-18, 2021</u>: Claimant presented with altered mental status and right side weakness. Claimant diagnosed with migraine and seizure. Claimant admitted to hospital for observation and treatment. A 24-hour EEC was performed resulting in an "unremarkable" finding but with significant "artifact." Dr. Turkewitz opined that the Claimant's seizures were perimenstrual in nature. (Rec. Doc. 4-1, Exhibit 8F at p. 592).

(8) <u>June 10-15, 2021</u>: Claimant presented with seizures occurring at home and in the ambulance during transport and was admitted to the hospital. Dr. Turkewitz observed Claimant having a seizure while he was at her bedside. Dr. Turkewitz noted that an MRI from the past year revealed mesial temporal

12

sclerosis, but that EEGs were normal. "Per work in the literature 10 – 15 % of patients with nonconclusive nonelectrical seizures will have occasional electrical seizures making this a difficult situation particularly when there are dual diagnoses." (Rec. Doc. 4-1, Exhibit 10F at p. 916). Claimant diagnosed with acute breakthrough seizure.

(9) <u>April 12-18, 2022</u>: Claimant presented with spouse who reported Claimant experienced multiple seizures at home. Claimant was "mildly postictal" upon arrival. Claimant was administered antiemetics, but experienced another seizure in the ER, after which she was intubated and admitted to the ICU for further treatment. Diagnosis at admission was "status epilepticus (HCC) acute[.]" (Rec. Doc. 4-1 at p. 50).

(10) May 2, 2022: Claimant presented with seizures, reporting four seizures at home prior to arrival. Claimant experienced two shaking spells at the ER and was helped to the ground for her safety. Claimant reported a recent adjustment in her Klonopin dosage, but that she was compliant with this medication. (Rec. Doc. 4-1 at pp. 9-21). Claimant was diagnosed with seizure-like activity (HCC) and acute cystitis with hematuria.

At step one of her analysis, ALJ Latham found that Claimant was not currently engaged in substantial gainful activity. (Rec. Doc. 4-1 at p. 27). At step two, the ALJ found that Claimant suffers from two severe impairments: seizure disorder and migraine headaches. (*Id.*). Other symptoms and conditions were noted, such as "lower back pain,

bursitis, and obesity" as well as "generalized anxiety disorder and bipolar disorder" but the ALJ determined that none of these were properly classified as "severe" within the meaning of the Act. (*Id.* at pp. 27-28).

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (*Id.* at p. 30). The ALJ considered listings 11.00 (Neurological – Adult) and 11.02 (Epilepsy). (*Id.* at p. 30). The ALJ found that Claimant's migraine headaches did not meet or medically equal any of the listings described in 11.00. Comparing Claimant's seizure disorder with the listings of 11.02, the ALJ determined that no medical evidence offered by Claimant demonstrated the frequency and severity of seizure or headache symptoms as required under that listing. (*Id.* at p. 30).

The ALJ's step three analysis failed to include discussion of Claimant's symptoms as reflected in the record and how such symptoms compared with the listed impairments considered. It is well established that an ALJ does not meet the statutory standard for step three analysis where no discussion of the claimant's symptoms in relation to the criteria of the listed impairment is included. 42 U.S.C. §405(b)(1); *Aulder v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). For this reason, this Court will recommend remand to enable a thorough analysis of Claimant's symptoms and whether they meet or medically equal a listed impairment.

At step four, the ALJ found that Claimant possessed the residual functional capacity to perform a full range of work at all exertional levels, but subject to specified non-exertional limitations: no climbing ladders, ropes, or scaffolds, and must avoid all exposure to workplace hazards such as unprotected heights, dangerous moving machinery, sharp objects, open flames, and extreme heat. (*Id.* at p. 30). Claimant's most well-developed objection is made as to step four, wherein she argues that the medical records demonstrate

14

a frequency and severity that would necessarily result in at least two absences from work each month without the benefit of forewarning and her inability to be on task at work at least 15% of the time. (Rec. Doc. 10 at pp. 1-2). The hearing transcript affirms that the ALJ did hear testimony from William Elmore, a vocational expert, wherein he opined that such absences and inability to remain on task would result in a substantial reduction to Claimant's employability. (Rec. Doc. 4-1 at p. 100). The ALJ found, however, that the medical evidence did not support the assumption that Claimant would be subject to such absences and inability to remain on task. (*Id.* at pp. 31-32). Specifically, the ALJ noted that Claimant failed to offer any medical opinion regarding her ability to work or the impact of her seizures and headaches on her ability to work. (*Id.* at p. 30). The ALJ's residual functional capacity determination is congruent with the opinions offered by Drs. Dees and Honigman, who did not examine Claimant, but offered medical opinions at the request of DDS based on review of the medical evidence in the record as of April 15, 2021. (*Id.* at pp. 115-122).

Although there is no requirement that an ALJ address the sustainability of employment in all cases, such a finding is necessary where the claimant's "ailment waxes and wanes in its manifestation of disabling symptoms." *Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005) (quoting *Frank v. Barnhart*, 326 F.3d at 619 (5th Cir. 2003)). The record reflects that Claimant's seizures abate for weeks at a time and then resume, often in quick succession. (Rec. Doc. 4-1, generally). The ALJ summarily concluded that the medical evidence did not support an assumption that Claimant would miss two unscheduled days of work per month and be off task at least 15% of the time. (Rec. Doc. 4-1 at pp. 32–33). The record shows that Claimant was transported to the hospital approximately 12 times between February 2020 and May 2022. (*Id.*, generally). During Claimant's January 2021 hospitalization at OLOL, Dr. Turkewitz opined that Claimant's seizures were

15

"perimenstrual" in nature, further supporting the characterization of Claimant's seizure disorder as a "waxing and waning" manifestation of disabling symptoms. (*Id.* at p. 592). The ALJ's conclusion that these frequent hospital visits, whether ending in discharge from the emergency department or admission to the hospital for treatment, would not interfere in Claimant's attendance at work appears unsupported by the evidence. Moreover, the ALJ omits analysis of the frequency of Claimant's symptoms and their impact on sustainability of employment altogether. This Court will further recommend remand for a thorough analysis of the waxing and waning nature of Claimant's disabling symptoms and their impact on Claimant's ability to sustain employment.

At step five, the ALJ determined that Claimant is capable of employment in the roles of Cashier II, Office Helper, and Sales Attendant. (Rec. Doc. 4-1 at p. 37). Considering the ALJ's errors at steps three and four discussed above, the ALJ should also reconsider the availability of suitable jobs in the national economy on remand.

Additionally, although it appears that medical record evidence regarding Claimant's seizures in May of 2022 were considered by the Appeals Council, these records do not appear to have been considered by the ALJ. (Rec. Doc. 4-1 at pp. 9–21). On remand, this Court would recommend that the ALJ be instructed to include Claimant's May 2022 records in the relevant analysis.

Finally, the record shows that Claimant requested a hearing via video teleconferencing on or about January 10, 2022. (Rec. Doc. 4-1 at p. 279). Despite this request, the ALJ conducted the Claimant's hearing via telephone. (*Id.* at pp. 74–75). On remand, Claimant should be permitted to again request a hearing via video teleconference, if desired. This Court notes that the ALJ offered no basis for the apparent denial of Claimant's request for hearing via video teleconference. Although this Court is aware of the COVID-19 precautions employed by the Commissioner, it would not appear that

Claimant's request would have required departure from any public safety measures associated with those precautions.

### Conclusion

For the reasons discussed herein, this Court recommends that Claimant Hemmy Smith's appeal be GRANTED, such that this matter be REVERSED and REMANDED to the Commissioner for rehearing pursuant to the fourth sentence 42 U.S.C. § 405(g). Inasmuch as the reversal and remand recommended herein falls under sentence four of 42 U.S.C. § 405(g), any judgment entered in conjunction herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). *See*, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992); *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

**THUS DONE** in Chambers, Lafayette, Louisiana on this 12th day of August 2024.

*[signature]*

**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**